**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore**

Civil Action No. 21-cv-00603-RM-MEH

HAROLD COSBY,

    Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY,

    Defendant.

---

**ORDER**

---

    This is a dispute over the payment on an underinsured motorist insurance policy following a car accident in which Plaintiff, Harold Cosby, was injured. (ECF No. 1.) At issue now is Defendant, GEICO General Insurance Company's ("GEICO") Motion for Summary Judgment. (ECF No. 32.) Mr. Cosby filed a Response (ECF No. 33), and GEICO filed a Reply (ECF No. 40). The Motion is ripe for resolution. Upon review of the Motion and related filings, relevant parts of the court record, and the applicable statutes and case law, and being otherwise fully advised, the Court finds and orders as follows.

    **I.    BACKGROUND**

    The following facts are undisputed by the Parties except as specifically noted. Mr. Cosby was involved in a car crash on February 13, 2018, and he alleges that he sustained spinal injuries as a result of the accident. (ECF No. 41.) At the time of the accident, Mr. Cosby was covered by an insurance policy issued by GEICO (the "Policy"). (Id.) Under the terms of the Policy, the insured was required to give notice to GEICO of the accident. (ECF No. 32-1.) The Policy also

stated that the insured was required to give GEICO "written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable." (Id.) It further stated that "[t]he injured person will submit to examination by doctors chosen by [GEICO], at [GEICO's] expense, as [GEICO] may reasonably require." Those policy terms appeared under a heading "CONDITIONS" which stated that "[t]he following conditions apply to the Uninsured Motorists Coverage." (Id.)

It is unclear whether Mr. Cosby notified GEICO about the accident prior to obtaining legal representation but on January 13, 2020, his attorney sent a letter of representation to GEICO and requested copies of all information about the accident and the Policy[1]. (ECF No. 41.) The Parties corresponded regarding the status of Mr. Cosby's treatment and the billing records for that treatment in March of 2020. (Id.) Mr. Cosby's counsel then sent another letter of representation to GEICO August 17, 2020, again confirming representation and requesting the same information from GEICO. (Id.) GEICO acknowledged the letter and Mr. Cosby's intent to file a claim for uninsured/underinsured motorist ("UIM") coverage. (Id.) GEICO requested all of Mr. Cosby's medical records, as well as an authorization permitting the release of those records from Mr. Cosby's doctors. (Id.) GEICO requested that Mr. Cosby provide proof of the details of his injuries and treatment "and other facts that may affect the amount payable." (Id.) GEICO also informed Mr. Cosby that it might require him to submit to an examination by a doctor of GEICO's choosing, paid for by GEICO (an "independent medical examination" or "IME"). (Id.) GEICO did not request that he do so at that time. (Id.)

---

[1] GEICO correctly points out that the exhibit attached by Mr. Cosby in his Response in support of this fact is a different letter, sent by GEICO to Mr. Cosby, on January 13, 2021. (ECF No. 33-3.) GEICO, however, does not contest that Mr. Cosby's attorney sent the letter at issue, and the Court concludes therefore that this fact is undisputed. (ECF No. 41.)

The Parties continued to correspond regarding Mr. Cosby's claim, and GEICO asked for additional documentation of Mr. Cosby's medical expenses and lost income. (Id.) Mr. Cosby requested, and received from GEICO, permission to settle with the motorist who caused his accident for that motorist's policy limit of $100,000. (Id.) Also at that time Mr. Cosby sent GEICO a letter that included an estimate for a back surgery which had been recommended by his doctor. (Id.) The Parties dispute the quantity of information Mr. Cosby provided to GEICO at that time—GEICO contends that he provided only a cost estimate produced by a medical finance company, while Mr. Cosby argues that he also provided documentation from his doctor setting out the recommendation for surgery. (Id., see also ECF Nos. 32-9, 33-11.) GEICO apparently acknowledges that it received some medical records with that letter but disputes the meaning of the doctor's language regarding the recommended course of Mr. Cosby's treatment. (ECF No. 41, RSUMF Nos. 52, 53.) As pertinent here, however, it is undisputed that the total estimated cost for the surgery that was sent to GEICO was $273,418. (Id.) About 15 days after receiving that letter, GEICO again contacted Mr. Cosby and requested "all of the medical billing records," and again reserved its right to eventually request an IME. (Id.) Mr. Cosby's counsel asserted that Mr. Cosby was entitled to collect his policy limits given that the cost of the surgery would exceed his $100,000 limit and the $100,000 he received from the other driver's insurance, combined. (ECF No. 33-14.) GEICO requested an IME for the first time on October 15, 2020. ((ECF No. 41, RSUMF No. 68.) At some point thereafter, (the precise timing is disputed) Mr. Cosby's attorneys informed GEICO that he had filed a lawsuit against GEICO. (ECF No. 41.) On January 13, 2021, GEICO sent another request that Mr. Cosby submit to an IME and also inquired about the status of the suit, requesting that his counsel forward GEICO a courtesy copy of the Complaint. (Id.) GEICO states that on February 1, 2021, Mr. Cosby's counsel informed

3

GEICO that the complaint was still being drafted and also that Mr. Cosby would not submit to an IME.  (Id., MSUMF No. 20.)  While Mr. Cosby's counsel states that he has no recollection of such a conversation, GEICO has provided a call log in support of this statement of fact.  (Id., OSUMF No. 20, ECF No. 32-11, p.7.)  Mr. Cosby filed this suit on March 1, 2021.  (ECF No. 1.)  In it, he raised four claims for relief: (1) breach of contract; (2) unreasonable breach of contract; (3) unreasonable delay or denial of benefits; and (4) declaratory relief.  (Id.)

In its Answer to the Complaint, GEICO asserted that Mr. Cosby's claims "may be barred or reduced by Plaintiff's failure to provide information he knew or should have known was necessary for performance under the contract including but not limited to providing medical records and non-compliance with a request for an independent medical examination requested in accordance with the contract of insurance."  (ECF No. 10, p.8.)  GEICO then filed its Motion for Summary Judgment.  (ECF No. 32.)

## II.     LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual inferences in its favor.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).

Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). "The substantive law of the case determines which facts are material." *United States v. Simmons*, 129 F.3d 1386, 1388 (10th Cir. 1997). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. Purely legal questions can also be resolved on summary judgment. *See Horn v. CSAA General Insurance Co.*, 642 F.Supp.3d 1267, 1268 (D. Colo. 2022).

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law." *York v. Safeco Ins. Co. of Am.*, 540 F. Supp. 3d 1049, 1053 (D. Colo. 2021). "In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim." *Id.* at 1053-54. "Once the movant has met its initial burden, the burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 1054 (quoting *Anderson*, 477 U.S. at 256). "The nonmoving party may not simply rest upon its pleadings to satisfy its burden. Rather, the nonmoving party must 'set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.'" *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

### B. Unreasonable Delay or Denial of an Insurance Benefit under §§ 10-3-1115 and -1116

Under Colorado law, "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." § 10-3-1115, C.R.S. (2024). "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." *Id.* "The reasonableness of an insurer's conduct is determined objectively, based on proof of industry standards." *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶ 53, 419 P.3d 985, 994, aff'd, 2018 CO 39, 418 P.3d 501 (internal citations omitted). A delay in the payment of benefits is not necessarily reasonable simply because it is fairly debatable, although that is one fact jurors can consider. *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226-27 (10th Cir. 2016). "In determining whether an insurer's delay or denial was reasonable, the jury may be instructed that willful conduct of the kind set forth in section 10-3-1104(1)(h)(I) to (1)(h)(XIV) is prohibited and may be considered if the delay or denial and the claimed injury, damage, or loss was caused by or contributed to by such prohibited conduct." § 10-3-1113, C.R.S. (2024). That provision, in turn, provides that such prohibited conduct includes, among other things, "refusing to pay claims without conducting a reasonable investigation based upon all available information," and "failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." §§ 10-3-1104(1)(h)(II), (IV), C.R.S. (2024).

### C. Common Law Bad Faith

In order to prove a claim for common law bad faith "involving the breach of an underinsured-motorist policy, the insured must prove that the insurer (1) acted 'unreasonably under the circumstances' and (2) 'knowingly or recklessly disregarded the validity of the

6

insured's claim.'" *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th Cir. 2016) (quoting *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 09, 414 (Colo. 2004)).

Thus, to establish his claim for statutory bad faith breach of contract, Mr. Cosby must establish that (1) benefits were owed; and (2) GEICO "unreasonably" delayed or denied payment of a claim for benefits owed. *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018); *see* Colo. Rev. Stat. § 10-3-1115(1)(a). "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). "[I]nsurers have a duty not to unreasonably delay or deny payment of covered benefits, even though other components of an insured's claim may still be reasonably in dispute." *Fisher*, ¶ 27, 418 P.3d at 506. "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Fisher*, ¶ 39, 419 P.3d at 992 (internal quotation marks and citation omitted).

### D. Failure to Cooperate Defense

Traditionally, Colorado law "recognizes that the right to recover under an insurance policy may be forfeited when, in violation of a policy provision, the insured fails to cooperate with the insurer in some material and substantial respect and the failure to cooperate causes material and substantial disadvantage to the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 46, ¶ 25, 351 P.3d 559, 565. On September 14, 2020, however, a new statutory provision took effect, and it directly addresses that defense to an insurance claim. § 10-3-1118, C.R.S. (2024). That statute provides, in pertinent part, that

> (1) To plead or prove a failure-to-cooperate defense in an action concerning an insurance policy providing first-party benefits or coverage, each of the following

conditions must be met before the defense is asserted in a court of law or an arbitration:

(a) The insurer has submitted a written request to the insured or the insured's representative for the information the insurer seeks via:

(I) Electronic means if the insured or the insured's representative has consented to receive electronic documents from the insurer; or

(II) Certified mail;

(b) The information is not available to the insurer without the assistance of the insured;
(c) The written request provides the insured sixty days to respond;

(d) The written request is for information a reasonable person would determine the insurer needs to adjust the claim filed by the insured or to prevent fraud; and

(e) The insurer gives the insured an opportunity to cure, which must:

(I) Include the furnishing of written notice to the insured of the alleged failure to cooperate, describing with particularity the alleged failure, within sixty days after the alleged failure; and

(II) Allow the insured sixty days after receipt of the written notice to cure the alleged failure to cooperate.

§ 10-3-1118.

The Colorado Court of Appeals noted that section 10-3-1118 "applies to litigation commencing on or after September 14, 2020." *Wenzell v. United Serv. Auto. Assn.*, 2024 COA 40, ¶ 31, __ P.3d __; *accord Sanchez-Bell v. CSAA Gen. Ins. Co.*, no. 22-cv-1678-WJM-STV, 2024 WL 2817504 at ** 2-3 (D. Colo. June 3, 2024) (adopting the *Wenzell* analysis of the new statute as the Colorado courts' interpretation of the Colorado statute).  The *Wenzell* Court also concluded "that the plain language and purpose of section 10-3-1118 indicate that strict compliance with its provisions is required." *Wenzell* at ¶ 47.  If an insurer fails to meet the requirements of that provision, it cannot then raise noncooperation as a defense. *Id.* at ¶ 39.

### III. ANALYSIS

#### A. Failure to Cooperate

GEICO rests much of its argument for summary judgment on its contention that Mr. Cosby failed to cooperate and therefore has forfeited his entitlement to benefits under the Policy. (ECF No. 32, pp.7-13.)  The Court will therefore begin by addressing that argument.  If the Court agrees with GEICO then it would not need to address the remaining contentions.

Mr. Cosby filed his complaint on March 1, 2021.  (ECF No. 1.)  Therefore, this case falls within the coverage of section 10-3-1118.  *Wenzell* at ¶ 31.  Whether GEICO is entitled to raise a failure-to-cooperate defense, then, is dictated by whether it complied with the terms of that statute.  Neither party has fully addressed this question, although GEICO acknowledges the existence of the provision.  Nevertheless, based on the undisputed facts the Court concludes that it can decide the question as a matter of law.

It is clear to the Court that GEICO met at least the first two steps of the statutory requirements: it (1) submitted a written request to the insured or the insured's representative for the information it sought, (ECF No. 41, MSUMF Nos. 8, 12, 15), and (2) the requested information included Mr. Cosby's medical authorizations, medical records, and an IME, which information would not have been available to GEICO without Mr. Cosby's assistance, (Id.).  GEICO does not assert, however, and the records of the correspondence do not demonstrate that it provided Mr. Cosby with 60 days to respond.  (Id; ECF Nos. 32-5, 32-8, 32-10.)  In fact, fewer than 60 days elapsed between GEICO's first request for information and its third letter.  Even if this point were debatable, given the fact that GEICO did not formally deny Mr. Cosby's claim before he filed suit, GEICO has presented no evidence or argument that it provided Mr. Cosby with an opportunity to cure his alleged failure to cooperate.  The statute requires that such an

opportunity be provided, and that it include a written notice to the insured, explaining with particularity the nature of the alleged failure as well as a 60 day period in which to cure the failure. Because the statute applied in this case, and because it required strict compliance, the Court concludes that GEICO is prohibited from raising a failure to cooperate defense in this case, and it will not grant summary judgment on that basis. Furthermore, because its arguments regarding non-cooperation provide the only basis upon which GEICO argues it is entitled to summary judgment on Mr. Cosby's first claim for relief, "breach of contract," the court will DENY the Motion for Summary Judgment (ECF No. 32) IN PART as to Mr. Cosby's first claim.

### B. Unreasonable Conduct

In order to prevail on both his statutory and common law claims, Mr. Cosby must prove that GEICO acted unreasonably. *See Peden*, 841 F.3d at 890 (common law claim); *Fisher*, ¶ 53, 419 P.3d at 994 (statutory claim). The Court turns, then, to GEICO's second argument, which is that it did not act unreasonably as a matter of law. (ECF No. 32, pp.13-17.) More specifically, GEICO asserts that Mr. Cosby has failed to allege that it acted unreasonably in any way. (Id. p.15.) It argues that it did not act unreasonably when it requested that Mr. Cosby submit to an IME—such a request is anticipated specifically in the Policy itself. (Id. pp.15-16.) GEICO further argues that, under Colorado law, it is reasonable for insurers to challenge "fairly debatable" claims. (Id. p.16.) And it points out that in this case, the amount in dispute was related to noneconomic damages which are the aspect of a claim most likely to be uncertain and subject to legitimate dispute. (Id.) Finally, it states that, because the future economic and noneconomic damages were the subject of a legitimate dispute, it was reasonable for GEICO to request additional information, including an IME, in order to evaluate the claim. (Id. pp.18-19.)

In response, Mr. Cosby makes several arguments. First, he claims that GEICO had

wrongfully denied his claim or at least "made the decision to wrongfully deny coverage" before it requested that he undergo an IME. (ECF No. 33, pp.17-18.) Mr. Cosby fails, however, to provide any record support for this contention. Furthermore, in response, GEICO notes that the evidence demonstrates its continued effort to investigate the claim, both before and after it requested the IME, and even after Mr. Cosby's counsel informed GEICO that Mr. Cosby had decided to sue. (ECF Nos. 40, p.10; 32-8; 32-10; 32-11; 32-12). In fact, the adjuster specifically wrote to Mr. Cosby's counsel noting that she had been advised that suit had been filed on the claim, requesting a copy of the complaint, *and* again requesting to schedule Mr. Cosby for an IME. (ECF No. 32-12.)

Mr. Cosby then argues that questions of fact remain as to whether GEICO acted reasonably in its investigation of his claim or unreasonably delayed that investigation, and whether GEICO's request for an IME was reasonable. (ECF No. 33, pp.18-19, 25-27.) In support of both of these arguments, Mr. Cosby cites Exhibits 17 and 18, what he states are the expert report of his witness, Damian Arguello. (Id.) Unfortunately, however, Mr. Cosby did not file Exhibits 17 or 18 with the Court[2]. While GEICO failed to directly address this alleged evidence, the Court has reviewed the evidence submitted by both Parties.

The undisputed evidence demonstrates that on October 6, 2020, Mr. Cosby first informed GEICO of the estimated cost of his surgery, $273,418. (ECF No.41, MSUMF No. 14.) GEICO responded to that information within 15 days. (Id. MSUF No. 15.) In that correspondence, GEICO requested an IME for the first time. (Id., MSUMF No. 15, RSUMF No. 68.) At some point after that, but before January 13, 2021, Mr. Cosby's counsel informed GEICO that Mr.

---

[2] The Court notes that it did receive Exhibit T (ECF No. 41-7), which was submitted by GEICO, and which appears to be one page of Mr. Arguello's expert report. However, in that it is both incomplete and was not submitted by Mr. Cosby, any opinion the report might otherwise contain cannot be meaningfully used by the Court.

11

Cosby had filed, or intended to file, suit on this claim. (Id., MSUMF No. 18.) It was on January 13, 2021, that GEICO sent Mr. Cosby additional correspondence, asking for the copy of the suit and again requesting that Mr. Cosby undergo an IME. (Id.) GEICO renewed the request for an IME for a third time in a letter to Mr. Cosby's counsel sent on January 31, 2021. (Id., RSUMF No. 70.) At some point thereafter, Mr. Cosby's counsel informed GEICO that Mr. Cosby would not submit to an IME. (Id., MSUMF No. 20.) And on March 1, 2021, Mr. Cosby's counsel filed the Complaint. (Id., MSUMF No. 21; ECF No. 1.)

Thus, the undisputed evidence demonstrates that within about two weeks of receiving Mr. Cosby's estimates for the cost of his surgery, GEICO followed up in an effort to investigate further. Mr. Cosby apparently not having complied with GEICO's request, GEICO followed up again within three months to again request that he undergo the IME and to inquire about the lawsuit he apparently intended to file. Less than two months later Mr. Cosby filed suit.

GEICO points out that there is no evidence that would permit a jury to conclude any of those actions or delays were unreasonable. Mr. Cosby has presented no evidence to the Court that would allow it to reach a different conclusion. As GEICO points out, the Policy specifically contemplates that GEICO can request that an injured party to undergo an IME. (ECF No.32-1, p.5.) Mr. Cosby has not offered evidence to explain why GEICO could not reasonably make such a request. GEICO has presented evidence that it diligently corresponded with Mr. Cosby and attempted to investigate his claim. (ECF Nos. 32-4; 32-5; 32-7; 32-8; 32-10; 32-11; 32-12.) That evidence also demonstrates that less than a month passed between each attempted communication by GEICO, and generally a much shorter time elapsed. (Id.) Mr. Cosby points to an expert report that is unfortunately unavailable to the Court as the only basis upon which to dispute the reasonableness of GEICO's handling of his claim. Thus, Mr. Cosby has failed to

12

support his argument that a genuine issue of material fact exists as to the reasonableness of GEICO's conduct. The Court concludes that because the evidence is entirely one-sided, no reasonable jury could return a verdict for Mr. Cosby on this point.

Because, in order to prevail on both the claim for unreasonable delay under the statute and the claim for bad faith breach of an insurance contract under the common law Mr. Cosby would be required to prove that GEICO acted unreasonably, and because Mr. Cosby failed to meet that burden here, the Court must GRANT the Motion for Summary Judgment (ECF No. 32) IN PART in favor of GEICO on Mr. Cosby's second and third claims for relief—his claim for "unreasonable breach of a contract[3]" and his claim for "unreasonable delay or denial of benefits."

### C. Mr. Cosby's Fourth Claim for Relief

Mr. Cosby's Complaint includes what he labels a fourth claim, ostensibly requesting declaratory judgment. (ECF No. 1, pp.9-10.) The Court notes that this claim does not make any request for a particular declaration of rights or obligations. At most, the Court construes the claim as requesting judgment in Mr. Cosby's favor on its contract claim. In any event, although GEICO requests summary judgment on all of Mr. Cosby's claims, its Motion does not specifically address the request for declaratory relief. (ECF No. 32.) Given that lack of argument, and the fact that the Court has already concluded that Mr. Cosby's contract claim can proceed, the Court will not address the fourth claim other than to say that the Motion for Summary Judgment (ECF No. 32) is DENIED IN PART as the request for declaratory judgment.

### IV. CONCLUSION

Accordingly, for the reasons set forth herein, it is **ORDERED t**hat GEICO's Motion for

---

[3] Based on the language used in his framing of this claim, the Court construes it as a claim for bad faith breach of an insurance contract under the common law. (ECF No.1, pp. 4-7.)

13

Summary Judgment (ECF No. 32) is **GRANTED IN PART AND DENIED IN PART**:

(1) The Motion for Summary Judgment is GRANTED IN PART as to Mr. Cosby's second claim, for unreasonable breach of contract, and third claim, for unreasonable delay or denial of an insurance benefit, which claims are hereby dismissed; and

(2) The Motion for Summary Judgment is DENIED IN PART as to Mr. Cosby's first claim, for breach of contract, and fourth claim, for declaratory judgment.

DATED this 25th day of June, 2024.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge